UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

QUENTIN BLADE,

    Defendant.

CASE NO. 1:15-cr-00035-JG-1

OPINION & ORDER
[Resolving Doc. 93, Doc. 113]

---

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant Quentin Blade requests a reduced sentence under the compassionate release statute 18 U.S.C. § 3582(c)(1)(A).[1] The Government opposes.[2] Blade has twice supplemented his motion, once through appointed counsel.[3]

For the following reasons, the Court **DENIES** Defendant Blade's motion for compassionate release.

I.     Background

In 2015, Defendant Blade pled guilty to nine armed robbery counts.[4] Blade and co-Defendant Nicholas Daniel robbed Cleveland-area Dollar General stores, a Family Dollar store, and an ACE Cash Express in August and September 2014.[5] This Court sentenced Defendant Blade to 190 months' imprisonment.[6]

Blade now moves for compassionate release, claiming that his medical conditions

---

[1] Doc. 93; Doc. 113.
[2] Doc. 116.
[3] Doc. 94; Doc. 113.
[4] Doc. 78 at 1–2.
[5] Doc. 80; Doc. 116 at 1–3.
[6] Doc. 78 at 3.

make potential COVID-19 illness more dangerous.[7] Since Blade filed his request, the Bureau of Prisons transferred Blade from FCI Edgefield to FCI Petersburg Medium.[8]

## II. Discussion

### A. Exhaustion

Under 18 U.S.C. § 3582(c)(1)(A)(i), the Court may modify a defendant's prison term once the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[9]

On July 13, 2020, Defendant Blade sought compassionate release from his warden at FCI Edgefield.[10] Blade filed his motion for compassionate release on August 17, 2020,[11] more than 30 days after requesting his release from the warden.

Blade satisfies § 3582(c)(1)(A)(i)'s exhaustion requirement.

### B. Eligibility

To grant compassionate release, a court must: (1) "find that extraordinary and compelling reasons warrant [a sentence] reduction,"[12] (2) "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) "consider[ ] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)."[13]

---

[7] Doc. 93 at 1; Doc. 113 at 7.

[8] Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited July 5, 2021). It is not clear when the BOP transferred Blade, although documents from June 2021 indicate he was still housed at FCI Edgefield. *See* Doc. 113 at 3; Doc. 116 at 8.

[9] 18 U.S.C. § 3582(c)(1)(A)(i).

[10] Doc. 116-1.

[11] Doc. 93.

[12] "[I]n the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *U.S. v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021).

[13] *Id.* at 518 (citing *U.S. v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) and 18 U.S.C. § 3582(c)(1)(A)) (internal quotation marks omitted).

Case No. 1:15-cr-00035-JG-1
Gwin, J.

There are currently no applicable Sentencing Commission policy statements for inmate-filed compassionate release motions.[14] The court "may skip step two" where an inmate files a motion on their own behalf.[15]

Under the compassionate release statute, a court may "reduce the term of imprisonment . . . and impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment."[16]

### a. Extraordinary and Compelling Reasons

Defendant Blade seeks compassionate release because he suffers from health conditions that put him at risk of serious illness if he contracts COVID-19.[17] Defendant's health conditions include HIV, hypertension, and high cholesterol. The Centers for Disease Control lists HIV infection and hypertension among conditions that could put someone at risk of severe illness from COVID-19.[18]

The Court recognizes Blade's heightened risk factors and fear of infection in his current facility. FCI Petersburg Medium has had COVID-19 outbreaks before.[19] But Blade declined an offered COVID-19 vaccination,[20] which would have substantially decreased his

---

[14] *See Elias*, 984 F.3d at 519 ("[U.S.S.G.] § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions."); *Jones*, 980 F.3d at 1108 (stating that "[t]he Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13" but explaining that "§ 1B1.13 does not 'appl[y]' to cases where an imprisoned person files a motion for compassionate release.").
[15] *Jones*, 980 F.3d at 1111.
[16] 18 U.S.C. § 3582(c)(1)(A).
[17] Doc. 113 at 7.
[18] Centers for Disease Control and Prevention, *People with Certain Medical Conditions* (May 12, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.
[19] Federal Bureau of Prisons, *Covid-19 Coronavirus*, https://www.bop.gov/coronavirus (last visited June 6, 2021).
[20] Doc. 116-2 at 55.

Case No. 1:15-cr-00035-JG-1
Gwin, J.

risk of infection.[21] Further, there are currently no COVID-19 infections at FCI Petersburg,[22] and the vast majority of the institution's population is fully vaccinated.[23]

Although Blade's health conditions could merit extraordinary and compelling reasons for his early release, Defendant's vaccine refusal and the 18 U.S.C. § 3553(a) factors weigh more heavily against release.

### b. 18 U.S.C. § 3553(a) Factors

The Court must consider the 18 U.S.C. § 3553(a) factors to determine whether Defendant should be granted compassionate release. The factors include "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" and the need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant," among other factors.[24]

Blade's projected release date is November 18, 2028.[25] Blade has served nearly 78 months of his sentence[26] and has approximately 88 months left to serve. Blade maintains

---

[21] See Centers for Disease Control and Prevention, *COVID-19 Vaccine Effectiveness Research* (February 18, 2021), https://www.cdc.gov/vaccines/covid-19/effectiveness-research/protocols.html.

[22] Federal Bureau of Prisons, *Covid-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited June 5, 2021).

[23] FCI Petersburg Medium has 1,516 inmates. Federal Bureau of Prisons, *FCI Petersburg Medium*, https://www.bop.gov/locations/institutions/pem/ (last visited July 12, 2021). The Petersburg Federal Correctional Complex appears to include FCI Petersburg Medium and FCI Petersburg Low. FCI Petersburg Low has a total of 622 inmates. Federal Bureau of Prisons, *FCI Petersburg Low*, https://www.bop.gov/locations/institutions/pet/ (last visited July 12, 2012). The Bureau of Prisons reports that 1,936 inmates at the Petersburg Federal Correctional Complex are fully vaccinated. Federal Bureau of Prisons, *Covid-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited July 12, 2021). While it is not clear how many people have been vaccinated at FCI Petersburg Medium specifically, the BOP's reporting suggests that more than 90% of the entire Petersburg Complex's inmates have been vaccinated.

[24] 18 U.S.C. § 3553(a).

[25] Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited July 5, 2021).

[26] Doc. 113 at 3.

Case No. 1:15-cr-00035-JG-1
Gwin, J.

that if released, he will live with his brother in Painesville, Ohio.[27] He plans to enroll in trade school to obtain a commercial driver's license and to immediately seek employment if released.[28] Blade further states that he "will refrain from all negativity and proudly participate in all programs offered to [him] by the Probation Department." Blade also highlights that he has completed numerous rehabilitation programs during his time in prison.[29]

However, this Court already sentenced Defendant to six years less than the lower end of the range recommended in his presentence report.[30] Shortening his sentence further would not fulfill this Court's intent to reflect the gravity of Defendant's actions or provide just punishment for the serious offenses he committed.

Furthermore, Defendant has an extensive criminal history, including serious crimes and several robberies other than the ones for which he is currently imprisoned.[31] Defendant is in prison for conduct committed while on previous post-release control.[32] The Court is not convinced that Defendant would not be a danger to the community if released or that a shortened punishment would adequately deter similar future criminal conduct.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant Blade's request for compassionate release.

---

[27] *Id.* at 9.
[28] *Id.*; Doc. 94 at 3.
[29] Doc. 113 at 9; Doc. 94-3; Doc. 113-4.
[30] The sentencing guidelines recommended 262–327 months' imprisonment. Doc. 75 at 36. This Court sentenced Defendant to 190 months imprisonment. Doc. 78 at 3.
[31] Doc. 75 at 24–31.
[32] *Id.*

Case No. 1:15-cr-00035-JG-1
Gwin, J.

IT IS SO ORDERED.

Dated: July 13, 2021

                                              *s/ James S. Gwin*
                                              JAMES S. GWIN
                                              UNITED STATES DISTRICT JUDGE